UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA,

v.                                         CASE NO. 8:11-CR-581-T-17TBM

EVER HERNANDEZ-PENALOZA.

_____/

ORDER

This cause is before the Court on:

Dkt. 19   Motion to Suppress
Dkt. 21   Opposition
Dkt. 31   Supplemental Memorandum
Dkt. 35   Supplemental Memorandum
Dkt. 42   Report and Recommendation
Dkt. 43   Objection (United States)
Dkt. 44   Objection (Defendant)

The assigned Magistrate Judge conducted an evidentiary hearing, and has entered a Report and Recommendation in which it is recommended that the Motion to Suppress be granted in part and denied in part.

The Court has independently reviewed the pleadings and the record. The Court listened to the digital recording of the evidentiary hearing. The Government and Defendant have filed timely objections to the Report and Recommendation.

I. Standard of Review

The District Court reviews de novo the portions of the Report and Recommendation or specified proposed findings to which an objection is made. The District Court may accept, reject, or modify in whole or in part the report and

Case No. 8:11-CR-581-T-17TBM

recommendation of a magistrate judge, or may receive further evidence, or may recommit the matter to the magistrate judge with instructions.

A district court may not override essential, demeanor-intensive fact finding by a magistrate judge without hearing the evidence itself or citing an exceptional justification for discarding the magistrate judge's findings. Rejecting credibility findings made by a magistrate judge without holding a new hearing is permissible only when there is an "articulable basis for rejecting the magistrate's original resolution of credibility." Amlong & Amlong, P.A. v. Denny's, Inc., 500 F.3d 1230, 1250 (11th Cir. 2007)(citing U.S. v. Marshall, 609 F.2d 152, 155 (5th Cir. 1980)).

II. Objections

A. United States

The Government has made the following objections:

1) the Government objects to the determination that, although the detectives had probable cause to arrest the defendant, the warrantless arrest itself occurred inside the home in violation of the Fourth Amendment; the facts show the arrest was made outside the residence and was not illegal;

2) the Government objects to the determination that Ms. Moreno was detained in violation of the Fourth Amendment; she was interviewed but not unlawfully detained;

3) the Government objects to the determination that the consent to search granted in writing by Ms. Moreno and by Defendant Hernandez-Peneloza was insufficient to warrant introduction of the firearm and ammunition found after that consent. The Government contends the consent was knowingly and voluntarily given and, if it was given after an illegal arrest or an illegal security sweep, their consent was not fruit of the poisonous tree and it warranted introduction of the evidence found after

2

Case No. 8:11-CR-581-T-17TBM

that consent.

1. Arrest of Defendant Hernandez-Peneloza

As to the Government's first objection, in the Report and Recommendation, the assigned Magistrate Judge acknowledges that Defendant was arrested on the front doorstep of his residence and not inside the residence. However, the Magistrate Judge found that the rationale of Payton dictates the same legal conclusion, based on the occupants' coerced exit from the residence at gunpoint. The Magistrate Judge notes that:

> "In this Circuit, "[t]he rule of Payton is that there is 'a firm line at the entrance to the house,' and absent exigent circumstances 'that threshold may not reasonably crossed without a warrant." (Citation omitted). "Payton keeps the officer's body outside the threshold, not his voice. It does not prevent a law enforcement officer from telling a suspect to step outside his home and then arresting him without a warrant."....However, at least four circuits have also concluded that where the police use coercive tactics to force a person out of his home to effectuate the warrantless arrest, the arrest is considered to have taken place within the home and contrary to ...Payton and the Fourth Amendment."

The Government argues that Knight v. Jacobson, 300 F.3d 1272 (11th Cir. 2002) closely mirrors the facts of this case and is controlling precedent under which the Court should find that the arrest of Defendant Hernandez-Penaloza did not violate the Fourth Amendment. The Court notes that Knight involved a vocal direction by one officer that Knight step outside his apartment, without coercive tactics, unlike the factual scenario in U.S. v. Morgan, 743 F.2d 1158, 1166-67 (6th Cir. 1984) (nine officers surround home, flooding home with spotlights, and summoned suspect through a bullhorn). In this case, a team of eight deputies went to the residence to make the arrest. All had guns, and some wore masks. Some deputies were placed around the house. Woods and

3

Case No. 8:11-CR-581-T-17TBM

other deputies, with guns held in the low-ready position, went to the front entrance, knocked, and loudly announced their presence. When Ms. Moreno opened the front door, with Defendant Hernandez-Penaloza standing behind her, deputies told them to step outside with their hands up or visible, and they did so. The facts of this case are closer to Morgan than Knight.

In McLish v. Nugent, 483 F.3d 1231, 1240-41 (11th Cir. 2007), the Eleventh Circuit Court of Appeals discusses warrant requirement for seizing a person within the sanctity of the home, and the few exceptions to the warrant requirement. Other courts have relied on the cases cited in the Report and Recommendation to support the Magistrate Judge's conclusion, e.g. Orosco v. State of Texas, 2012 WL 2924473 (1st DCA Texas 7/12/2012). After consideration, the Court **overrules** the Government's objection as to this issue.

2. Moreno Detention

The Government objects to the Magistrate Judge's determination that Ms. Moreno was detained in violation of the Fourth Amendment. The Government argues that Ms. Moreno was interviewed but not unlawfully detained. The Government argues that the questioning by Detective Woods was appropriate under the circumstances; Detective Woods asked about whether anyone else was in the house or if there were guns in the house. The Government argues that these questions were consistent with officer safety and the fact that officers were going to make a quick security sweep of the premises in connection with the arrest of Defendant Hernandez-Penaloza. According to Detective Woods, Ms. Moreno indicated there was a gun in the bedroom. Deputies entered the house, conducted a security sweep, and determined that no one else was inside. Detective Woods told Ms. Moreno that Defendant was involved in home invasions and was going to be arrested. Detective Woods then sought consent from Ms. Moreno and from Defendant to search the house for guns.

4

Case No. 8:11-CR-581-T-17TBM

In the Report and Recommendation, the Magistrate Judge notes that the deputies ordered Ms. Moreno out of her house at gunpoint, and, at that time, the deputies had no information to suggest Ms. Moreno's involvement in any criminal activity or any other justification for ordering her out of her house and detaining her for an hour without a warrant.

An investigatory stop must be justified at its inception, and its scope must be reasonably related to the circumstances that permitted the intrusion at the outset. Terry v. Ohio, 392 U.S. 1, 20 (1968). Personal encounters between law enforcement officers and citizens are "seizures" on occasions "when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen." Terry v. Ohio, 392 U.S. 1, 19 n. 16 (1968). Without physical contact, the show of authority must cause the individual to submit to the asserted authority. California v. Hodari, 499 U.S. 621 (1991).

The touchstone of the Fourth Amendment is reasonableness. The reasonableness of a stop turns on the facts and circumstances of each case. There is "'[n]o ready test for determining reasonableness other than by balancing the need to search [or seize] against the invasion which the search [or seizure] entails.'" 392 U.S., at 21. Although the conduct of the officer in Terry involved a "severe, though brief, intrusion upon cherished personal security"...[the Supreme Court] found that the conduct was reasonable when [the Supreme Court] weighed the interest of the individual against the legitimate interest in "crime prevention and detection," ....and the "need for law enforcement officers to protect themselves and other prospective victims of violence in situations where they lack probable cause for an arrest."....When the officer has a reasonable belief "that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others, it would appear to be clearly unreasonable to deny the officer the power to take

Case No. 8:11-CR-581-T-17TBM

necessary measures to determine whether the person is in fact carrying a weapon and to neutralize the threat of physical harm." Michigan v. Long, 463 U.S. 1032, 1046-47 (1983)(citations omitted).

The Court notes that "[P]olice may take reasonable action, based on the circumstances, to protect themselves...or to maintain the status quo." U.S. v. Kapperman, 764 F.2d 786, 790 n. 4 (11th Cir. 1985). However, in this case, considering the fact that Ms. Moreno was forcibly removed from her residence at gunpoint, that the deputies did not suspect Ms. Moreno of involvement in criminal activity, that there was sufficient time to obtain a warrant, and exigent circumstances were not present, the Court finds no error in the determination that Ms. Moreno was detained in violation of the Fourth Amendment. Ms. Moreno's detention was not justified at its outset. The Court **overrules** the Government's objection as to this issue.

3. Consent Freely and Voluntarily Given; "Fruit of the Poisonous Tree"

The Government argues that the consents of Defendant and Ms. Moreno should be upheld.

The Magistrate Judge determined that the testimony of Defendant and Ms. Moreno was not credible, and, apart from the forcible removal of the occupants from the residence, the deputies did not appear to use additional threats, coercion or promises to obtain consent to search such that their signing of the consent forms was not an act of free will. In other words, the Magistrate Judge determined that Defendant and Ms. Moreno did give their consent to search freely and voluntarily. In spite of the consent given by Defendant and Ms. Moreno, the Magistrate Judge concluded that the warrantless arrest of Defendant and the detention of Ms. Moreno violated the Fourth Amendment due to the coerced exit of Defendant and Ms. Moreno from their residence, which the Court ruled on above.

Case No. 8:11-CR-581-T-17TBM

Consent given after an illegal arrest may be tainted such that evidence seized pursuant to the consent is "fruit of the poisonous tree." U. S. v. Delancy, 502 F.3d 1297, 1308 (11th Cir. 2007). The Government has the burden of establishing voluntary consent, and whether consent, even if voluntary, requires exclusion of the evidence found during the search because it is "fruit of the poisonous tree," the product of an illegal search or seizure. In this case, the Magistrate Judge considered whether the consents were voluntary, and then determined whether the consents were the product of an illegal seizure. The Magistrate Judge considered the temporal proximity of the seizure and the consent; the presence of intervening circumstances, and the purpose and flagrancy of official misconduct. The Magistrate Judge concluded that the Government may not rely on consent to support the warrantless search. The Magistrate Judge found that temporal proximity weighed against a finding of attenuation, and that intervening circumstances was a neutral factor.

The Court notes that the Consent Form signed by Erica Moreno states:

"I, EM (initials) do hereby consent that the premises/vehicle located at 5910 Bassa St. Wimauma, FL may be searched by any Hillsborough County Sheriff's Office Law Enforcement Official. This consent extends to the main building and any enclosures found on the property. I further agree that anything or any article that may be found in the search of the premises/vehicle may be used at trial in any manner of which I may stand accused. I fully understand my constitutional rights in regard to the search and it is my intention to fully and completely waive such rights by this consent. I give this consent freely and voluntarily, without compulsion or threat of any kind."

The Consent Form signed by Defendant Hernandez-Penaloza is in Spanish, and includes the same statements as the Moreno consent. A different address is included in Defendant's consent.

Case No. 8:11-CR-581-T-17TBM

In U.S. v. Delancy, 502 F.3d 1297 (11th Cir. 2007), the consent form included the following:

> "I understand that I have a right to refuse to give my consent to a search and may demand that a search warrant be obtained prior to any search of the person or property described below.
>
> I understand that any contraband or evidence of a crime found during the search can be seized and used against me in any court of law or other proceeding.
>
> I understand that I may consult with an attorney before or during the search.
>
> I understand that I may withdraw my consent to this search at any time prior to the search's termination.
>
> This consent to search has been given voluntarily without promises, threats, coercion or force of any kind whatsoever.
>
> I have read the above statement of rights, understand these rights, and hereby authorize agents of the Bureau of Alcohol, Tobacco and Firearms to conduct a complete search of the property described below."

In U.S. v. Quintana, 594 F.Supp.2d 1291, 1304 (M.D. Fla. 2009), the consent form provided:

> I understand that I have the right to refuse to consent to the search described above and to refuse to sign this form. I further state that I give this consent freely and voluntarily, and that no promises, threats, force, or physical or mental coercion, of any kind whatsoever, have been used against me to get me to consent to the search described above or to sign this form.

The significance of the terms of the consent form is that they demonstrate awareness of Fourth Amendment rights, not voluntariness. The Magistrate Judge concluded that the form did not fully advise Defendant or Ms. Moreno of their Fourth Amendment rights. The Court finds no error in the determination that temporal

Case No. 8:11-CR-581-T-17TBM

proximity weighs against attenuation, and that intervening circumstances (in this case the provisions of the consent form and calling in a Spanish-speaking deputy unassociated with the arrest) is a neutral factor.

As to purpose and flagrancy, the Magistrate Judge concluded that the deputies acted purposefully to side-step the warrant requirement of the Fourth Amendment, as the testimony and evidence does not show good cause for failure to secure an arrest or search warrant and there is no claim of exigent circumstances.

As to Ms. Moreno and Defendant, the Government argues that the Court should find that both gave voluntary consent because there was no indication of threatening conduct by the deputies, and the officers demonstrated concern for ensuring a knowing consent by waiting for a translator. The Government argues that the Magistrate Judge has taken the actions of Detective Woods in inquiring about the presence of firearms in the residence and seeking consent from Defendant and Ms. Moreno out of context, and the Court should recognize these actions for what they are, a normal concern about whether firearms or other people are present in the house before doing a security sweep, the concern for safety of the officers, and a normal request for consent to search, given the knowledge that a firearm was within the residence.

The Court well understands the concern about the presence of firearms or other people in the house, safety of the officers, and the normality of a request for consent to search the residence. However, reasonableness is determined on the basis of the totality of the circumstances. In this case, there was an absence of exigent circumstances, and sufficient time to obtain a warrant, which was not done.

The Government requests the Court to find that the deputies did not unlawfully detain Ms. Moreno, and did not enter the residence for an unlawful purpose, and, further, that any illegal detention or entry did not taint Ms. Moreno's consent. The

Case No. 8:11-CR-581-T-17TBM

Government requests that the Court determine that the deputies' conduct was not a sham or made in bad faith. The Government relies on United States v. Welch, 683 F.3d 1304 (11th Cir. 2012) and United States v. Smith, 2012 WL 2989105 (11th Cir. July 23, 2012).

In Welch, the Eleventh Circuit Court of Appeals determined that consent was voluntary, there was no exploitation of unlawful entry, and there was no taint such as to make the evidence "fruit of the poisonous tree." The Eleventh Circuit relied on United States v. Santa, 236 F.3d 662 (11th Cir. 2000) (voluntary consent did not purge primary taint of illegal entry and arrest) and United States v . Delancy, 502 F3d 1297 (11th Cir. 2007) (entry unlawful but not a subterfuge, no flagrant acts), and determined that Welch's consent was voluntary.

In United States v. Smith, 2012 WL 2989105 (11th Cir. 7/23/2012), the Eleventh Circuit Court of Appeals held that: 1) the time between the officers' entry into Defendant Smith's home and his consent to search was not the most important factor; 2) the officers did not interfere with Defendant Smith making a knowing, intelligent and voluntary consent to search, and 3) the officers had a lawful purpose in entering defendant's home and did not act flagrantly. The Eleventh Circuit said that, even if the officers' entry was illegal, the officers did not exploit the circumstances of their entry to obtain the evidence. After considering the totality of the circumstances, the Eleventh Circuit concluded that the officers' entry did not taint Defendant Smith's voluntary consent.

The Court has considered the sequence of events leading to Defendant's and Ms. Moreno's consent to search, and finds no error in the findings and conclusions of the Magistrate Judge that Defendant Hernandez-Penaloza and Ms. Moreno freely and voluntarily consented to the search of the residence, but that the Defendant's arrest and Ms. Moreno's detention nevertheless were in violation of the Fourth Amendment, and,

10

Case No. 8:11-CR-581-T-17TBM

under the totality of the circumstances, not sufficiently attenuated to dissipate the taint. After consideration, the Court **overrules** the Government's objection as to this issue.

B. Defendant Hernandez Penaloza

Defendant objects to findings that the post-arrest pre-Miranda statements be admitted. Defendant relies on argument and authority in Defendant's original Motion, at the evidentiary hearing, and Supplement. Defendant requests that all evidence seized as a result of the unlawful seizure and search of his residence be suppressed.

Defendant has identified the specific issue to which Defendant objects, but does not state a specific basis for Defendant's objection. Defendant relies on arguments previously made, with a generalized assertion of error unsupported by any legal authority. Defendant's objection is not a "proper objection," and the general nature of the objection is not sufficient to trigger review by the Court. Macort v. Prem, Inc., 208 Fed. Appx. 781, 783-4 (11th Cir. 2006).

After consideration, the Court **overrules** Defendant's Objection.

The Court has overruled the objections of the Government and Defendant. The Report and Recommendation is **adopted and incorporated**. Accordingly, it is

**ORDERED** that the Objections of the United States of America and of Defendant are **overruled**. The Report and Recommendation (Dkt. 42) is **adopted and incorporated**. The Motion to Suppress is **granted in part and denied in part**. The Motion to Suppress (Dkt. 19) is **granted** as to suppression of the firearm and the ammunition, and Defendant's statements made at the district office, and is **denied** as to Defendant's post-arrest statements made while at the house.

Case No. 8:11-CR-581-T-17TBM

**DONE and ORDERED** in Chambers, in Tampa, Florida on this 20th day of August, 2012.

ELIZABETH A. KOVACHEVICH
United States District Judge

Copies to:
All parties and counsel of record